UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SMITH,

                Plaintiff,

v.

SECURE COLLECT LLC,
WORLD PROCESSING LLC,
LATOYA SHAREESE JORDAN, and
BRIAN ALONZO BROWN,

                Defendants.

_____/

## COMPLAINT

**I.    Introduction**

1.       Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit account and fake debt. Defendants are debt collectors who acquired the stolen information and counterfeit account, contacted Plaintiff and Plaintiff's relatives, falsely threatened Plaintiff with litigation and other adverse consequences, and coerced the payment of money from Plaintiff.

2.       Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*., Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

3.       Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country

1

and falsely threaten litigation and other adverse consequences unless the consumers pay money to Defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.      These schemes are epidemic and are operated by hundreds of entities located in and around Los Angeles, California, Jacksonville, Miami and Orlando, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

6.      On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

7.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a

felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information. It is an express violation of the FDCPA and Michigan law to commit a crime in connection with the collection of any debt.

## II.    Jurisdiction

8.    The Court has subject matter jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. The Court has supplemental jurisdiction regarding Plaintiff's state law claims under 28 U.S.C. § 1367. The Court has personal jurisdiction over each Defendant because each Defendant purposefully availed itself/himself/herself of the privilege of acting in Michigan, by contacting and threatening Plaintiff by telephone and email, with actual knowledge that Plaintiff resided and was physically present in Michigan when each of those communications took place, and caused Plaintiff's injuries to occur in Michigan.

## III.    Parties

9.    Plaintiff Daniel Smith is an adult, natural person residing in Michigan. Plaintiff is a "consumer" and "person" as the terms are defined and used in the FDCPA. Plaintiff is a "person" as the term is defined and used in the DPPA. Plaintiff is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

10.    Defendant Secure Collect LLC ("SC") is a Georgia limited liability company, organized July 31, 2023. According to the SC Annual Registration filed March 28, 2025 by Defendant Latoya Shareese Jordan with the Georgia Secretary of State, the "Principal Office

Address" for SC is 7380 Lazy Hammock Way, Flowery Branch, Georgia 30542, which also is

Ms. Jordan's residential address. The SC registered agent is Latoya Shareese Jordan, 7380 Lazy

Hammock Way, Flowery Branch, Georgia 30542. SC uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts. SC regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. SC is a "debt collector" as the term is defined and used in the FDCPA. SC is a

"regulated person" as the term is defined and used in the MRCPA. Alternatively, SC is a

"collection agency" and "licensee" as the terms are defined and used in the MOC.

       11.     On August 8, 2023, Defendant Latoya Shareese Jordan, using the email address

ljordan7781@gmail.com and telephone number 678-357-0645, registered through

GoDaddy.com, LLC, the internet domain www.securecollects.com, which links to an active

website that describes SC as a debt collector ("We specialize in consumer debt collection"),

operating at 235 Peachtree Street NE, Suite 350, Atlanta, Georgia 30303, telephone number 470-

480-3634. Defendants use the domain to communicate with their victims, using the email address

info@securecollects.com.

       12.     SC through its employees and agents, directly and indirectly participated in the

unlawful efforts to collect an alleged debt from Plaintiff that are described in this Complaint.

       13.     SC through its employees and agents, directly and indirectly participated in the

acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account

information, without a permissible purpose, as described in this Complaint.

       14.     Defendant World Processing LLC ("WP") is a Georgia limited liability company,

organized June 29, 2018. According to the WP Annual Registration filed January 27, 2025 by

Defendant Brian Alonzo Brown with the Georgia Secretary of State, the "Principal Office

Address" for WP is 235 Peachtree Street NE, Suite 350, Atlanta, Georgia 30303. The WP registered agent is Brian Alonzo Brown, 235 Peachtree Street NE, Suite 350, Atlanta, Georgia 30303. WP uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. WP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. WP is a "debt collector" as the term is defined and used in the FDCPA. WP is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, WP is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

15.    WP maintains workers compensation for its debt collector employees through National Liability & Fire Insurance Company, Policy Number N9WC787069. WP and Defendant Brian Alonzo Brown have falsely reported to the insurance carrier that WP and its employees operated at 3500 Lenox Road NE, Suite 1500, Atlanta, Georgia 30326-4231, when in fact, the address is merely a virtual office, rented from DaVinci/Instant Offices/The Instant Group.

16.    On September 24, 2024, a UCC Financing Statement (No. 0602024-05274) was filed with the Clerk of Superior Court, Fulton County, Georgia, California Secretary of State, naming Defendants WP and Brian Alonzo Brown as co-debtors, naming Olympus Lending LLC, 2225 E. Murray Holladay Road, Suite 200, Salt Lake City, Utah 84117 as secured party, and listing delinquent consumer accounts and the proceeds thereof as collateral. It will need to be determined in discovery whether the secured party that is funding Defendants' credit identity theft and debt collection scam is knowingly participating in the scam.

17.    On August 17, 2023, Defendant Latoya Shareese Jordan, using the email address ljordan7781@gmail.com and telephone number 678-357-0645, registered through GoDaddy.com, LLC, the internet domain www.world-processing.com, which links to an active

website that describes WP as a debt collector ("World Processing has efficient and effective strategies to acquire debts and place them with agencies to maximize recovery. . . . We understand financial challenges. Let us work with you to create a flexible payment plan that fits your budget. Contact us to discuss options,"), operating at 235 Peachtree Street NE, Suite 350, Atlanta, Georgia 30303. Defendants use the domain to communicate with their victims, using the email addresses info@world-processing.com, admin@world-processing.com and bbrown@world-processing.com.

18.     On August 22, 2025, Defendant Brian Alonzo Brown registered through GoDaddy.com, LLC, the internet domain www.worldprocessing.legal, which Defendants use to communicate with their victims, using the email addresses info@worldprocessing.legal. The internet domain extension "legal" is designed for law firms, lawyers, and legal service providers to enhance online credibility and brand recognition. Defendants selected and use the extension to create the illusion that Defendant World Processing LLC is a law firm.

19.     WP through its employees and agents, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff that are described in this Complaint.

20.     WP through its employees and agents, directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account information, without a permissible purpose, as described in this Complaint.

21.     Defendant Latoya Shareese Jordan is a natural person, age 44, residing at 7380 Lazy Hammock Way, Flowery Branch, Georgia 30542. Ms. Jordan is an owner, officer, member, manager, employee and/or agent of SC. Ms. Jordan uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Jordan regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. Ms. Jordan is a "debt collector" as the term is defined and used in the FDCPA. Ms.

Jordan is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Ms.

Jordan is a "collection agency" and "licensee" as the terms are defined and used in MOC.

22.    According to the State Bar of Georgia, Latoya Shareese Jordan, 4605 Grandview

Parkway, Flowery Branch, Georgia 30542, telephone number 678-357-0645, email address

ljordan7781@gmail.com, is an attorney, currently licensed to practice law in Georgia.

23.    Ms. Jordan (a) created the collection policies and procedures used by SC and

its employees and agents, in connection with their efforts to collect consumer debts, (b) managed

or otherwise controlled the daily collection operations of SC, (c) oversaw the application of the

collection policies and procedures used by SC and its employees and agents, (d) drafted, created,

approved and/or ratified the tactics and scripts used by all Defendants and their employees and

agents to collect debts from consumers, including the tactics and scripts that were used to attempt

to collect an alleged debt from Plaintiff as stated in this Complaint, (e) ratified the unlawful debt

collection practices and procedures used by all Defendants and their employees and agents in

connection with their common efforts to collect consumer debts, and (f) had knowledge of,

approved, participated in, and/or ratified the unlawful debt collection practices used by all

Defendants and their employees and agents, all who participated and acted in concert, to obtain

Plaintiff's personal and financial information, and use that information to contact Plaintiff and

Plaintiff's relatives, and falsely threaten Plaintiff with litigation and other adverse consequences

unless Plaintiff paid money to Defendants, as described in this Complaint.

24.    Ms. Jordan directly and/or indirectly participated in the unlawful efforts to collect

an alleged debt from Plaintiff that are described in this Complaint.

25.    Ms. Jordan directly and/or indirectly participated in the acquisition, disclosure and

use of Plaintiff's stolen, private, personal, financial and account information, without a permissible purpose, as described in this Complaint.

26.     Defendant Brian Alonzo Brown is a natural person, age 52, purportedly residing at 7033 Brushwood Bnd, Lithonia, Georgia 30058. Mr. Brown is an owner, officer, member, manager, employee and/or agent of SC and WP. Mr. Brown uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Brown regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Brown is a "debt collector" as the term is defined and used in the FDCPA. Mr. Brown is a "regulated person" as the term is defined and used in MRCPA. Alternatively, Mr. Brown is a "collection agency" and "licensee" as the terms are defined and used in MOC.

27.     Mr. Brown operates SC and WP from leased office space located at 235 Peachtree Street NE, Suites 350, 400 and 409, Atlanta, Georgia 30303.

28.     On September 24, 2025, the Internal Revenue Service filed a Federal Tax Lien (Filing Number 524314525), against Mr. Brown, in the amount of $182,088.00, in DeKalb County Superior Court, Decatur, Georgia. The document states that Mr. Brown resides at 7033 Brushwood Bnd, Lithonia, Georgia 30058.

29.     Mr. Brown sometimes uses the email address brianbrown156@gmail.com and telephone number 470-832-2142 in connection with Defendants' credit identity theft and debt collection scam.

30.     Mr. Brown (a) created the collection policies and procedures used by SC and WP and their employees and agents, in connection with their efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of SC and WP, (c) oversaw the

application of the collection policies and procedures used by SC and WP and their employees and agents, (d) drafted, created, approved and/or ratified the tactics and scripts used by SC and WP and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as stated in this Complaint, (e) ratified the unlawful debt collection practices and procedures used by SC and WP and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and/or ratified the unlawful debt collection practices used SC and WP and their employees and agents, all who participated and acted in concert, to obtain Plaintiff's personal and financial information, and use that information to contact Plaintiff and Plaintiff's relatives, and falsely threaten Plaintiff with litigation and other adverse consequences unless Plaintiff paid money to Defendants, as described in this Complaint.

31.     Mr. Brown directly and/or indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff that are described in this Complaint.

32.     Mr. Brown directly and/or indirectly participated in the acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account information, without a permissible purpose, as described in this Complaint.

33.     Defendants use the email address infoworldprocessing@gmail.com when conducting their credit identity theft and debt collection scam.

34.     Defendants use multiple, unregistered aliases when conducting their credit identity theft and debt collection scam, including: World Processing; World Processing Mediation Group; and World Processing, a Legal Firm."

35.     Defendants use multiple, fake addresses when conducting their credit identity

theft and debt collection scam, including: 102 West Main Street, Thomaston, Georgia 30286.

36.    Defendants use multiple telephone numbers when conducting their credit identity theft and debt collection scam, including: 269-224-9688; 404-445-3673; 470-290-6302; 470-475-6822; 470-480-3634; 636-236-9371; 734-224-6562; 833-589-1707; 855-563-0142; 855-638-0343; 860-879-9457; 906-464-6609; and 947-204-5845.

37.    Defendants own, control and use a Merchant Account established in the name of Secure Collect LLC, telephone numbers 404-445-3673 and 470-480-3634, located in Georgia, to receive credit card and debit card payments from their victims. Money deposited in the Merchant Account is shared among and distributed to Defendants, their employees and agents, and perhaps others. The application that was filed by Defendants with the Acquiring Bank to create the Merchant Account, as well as the related monthly account statements and other account records, will need to be obtained from the ISO and Acquiring Bank via subpoena in discovery, so that Plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in Defendants' credit identity theft and debt collection scam.

38.    Defendants' use of the described Merchant Accounts to receive credit card and debit card payments from consumers defrauded by Defendants violates the terms of the agreements between Defendants and Defendants' ISO and Acquiring Bank, violates the terms of the agreements between Defendants and Visa and MasterCard, and disqualifies Defendants from maintaining a Merchant Account and accessing the banking system.

39.    Plaintiff is proceeding against defendants collectively under multiple theories, including a common enterprise theory, by which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of

the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine

whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the

pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745,

746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the

corporate defendants "(1) maintain officers and employees in common, (2) operate under

common control, (3) share offices, (4) commingle funds, and (5) share advertising and

marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health

Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011).

Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate

veil piercing; instead, the entities within the enterprise may be separate and distinct corporations.

*F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23,

2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla.

July 18, 2013)).

40.     All defendants are intricately bound together and combine their efforts in a joint

and common enterprise, using concerted efforts to collect debts allegedly owed by consumers

throughout the United States. Defendants operate collectively and together, in such as way that

they are collecting debts for the benefit of each other, and making each defendant jointly and

severally for the unlawful acts of each defendant.

41.     Defendants operate as a single entity, commonly owned, operated and managed,

operating from shared office space, sharing the same staff, equipment, supplies and telephonic

services, and commingling revenue, expenses and payroll.

42.     An entity that itself meets the definition of debt collector is liable for the unlawful

collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

43.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

44.     On May 5, 2008, Plaintiff Daniel Smith obtained a loan from CitiFinancial Auto ("CitiFinancial") to purchase a used, red, 2003 Volkswagen Beetle motor vehicle for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term

is defined and used in the FDCPA, MRCPA and MOC.

45.     Plaintiff used the motor vehicle exclusively for personal, family and household purposes, such as transporting his children to and from school and other activities, grocery shopping, visiting friends and relatives, and other personal activities and chores.

46.     By letter dated September 6, 2010, CitiFinancial notified Plaintiff that Plaintiff's account and related debt had been assigned to Santander Consumer USA Inc. ("Santander"). The letter also stated that Santander had assigned the account a new account number, 30000173401021000.

47.     In 2010, Plaintiff became unable make monthly payment on the account and the account went into default.

48.     In 2011, Santander repossessed the vehicle from Plaintiff, sold the vehicle at auction, and applied the proceeds of the sale to the account balance, leaving Plaintiff owing Santander an alleged deficiency balance of $8,055.29.

49.     However, Santander failed to send Plaintiff a timely and proper notice of sale of the intended sale of the vehicle prior to the sale of the motor vehicle as required by the Uniform Commercial Code as enacted in Michigan. MCL 440.9610; MCL 440.9611; MCL 440.9612; MCL 440.9613; and MCL 440.9614.

50.     Because Santander failed to comply with the notice requirements of MCL 440.9613 and MCL 440.9614, Santander became "absolutely barred" from collecting any deficiency balance related to the sale of the repossessed motor vehicle. *State Bank of Standish v. Keysor,* 166 Mich App 93 (1988); *Honor State Bank v. Timber Wolf Constr. Co.,* 151 Mich App 681 (1986). By operation of law, any debt that Plaintiff may have owed on the vehicle was

satisfied in full by the money received by Santander for the sale of the vehicle, leaving Plaintiff with an account balance of zero.

51.     Regardless, and apart from Santander's violations of the UCC, any claim that Santander may have had against Plaintiff in connection with the account became time-barred and judicially unenforceable in 2015 by operation of the four-year statute of limitations found in the Michigan UCC, MCL 440.2725. *See Harden v. Autovest, L.L.C.,* No. 1:15-cv-34, 2015 WL 4583276, *2-5 (W.D. Mich. July 29, 2015).

52.     Plaintiff disputes owing any money to CitiFinancial, Santander, or anyone else in connection with the account.

53.     On February 28, 2011, Santander charged-off Plaintiff's account and related alleged debt.

54.     In 2014, Santander offered to sell to multiple parties, a portfolio of more than 100,000 delinquent automobile loan accounts, including Plaintiff's charged-off account. As part of that process, Santander provided substantial information regarding the accounts to multiple, prospective purchasers and brokers for evaluation. The prospective purchasers and brokers signed non-disclosure agreements for all accounts that were not purchased from Santander.

55.     Between July 25, 2014 and June 9, 2015, Santander sold a portfolio of more than 100,000 delinquent automobile loan accounts to non-party Cascade Capital, LLC ("Cascade"), a California limited liability company. Plaintiff's account was included in the sale from Santander to Cascade.

56.      Cascade assigned Plaintiff's account a new account number, 1022612877, and a reference number, 896527.

57.     Unbeknownst to Cascade, one or more of the prospective purchasers or brokers that had received and reviewed account information from Santander, retained and stole the information for the more than 100,000 Santander accounts, including information regarding Plaintiff's account.

58.     Thereafter, non-party D'Juan Dale Leverette obtained the stolen personal and account information for the more than 100,000 Santander accounts, including the stolen personal and account information regarding Plaintiff's account.

59.     From May 2017 to the present, Mr. Leverette has repeatedly sold and resold portfolios of stolen Santander accounts, including Plaintiff's stolen personal and account information, to multiple scam operators across the country, who have used the stolen personal and account information to periodically contact Plaintiff  and falsely threaten Plaintiff with prosecution, litigation and other adverse consequences, in efforts to extort the payment of money from Plaintiff.

60.     On February 9, 2026, Cascade confirmed that: (a) Cascade remained the lawful and sole owner of Plaintiff's account; (b) Cascade had suspended all efforts to collect the account; (c) the account information has been stolen and compromised; (d) no one is authorized to collect the account; and (e) multiple consumers had contacted Cascade and complained that they were being contacted and falsely threatened with arrest, prosecution, litigation and other adverse consequences, unless the consumers paid money to the scam callers to supposedly satisfy the stolen accounts that actually belonged to Cascade.

61.     The entities named as Defendants in this complaint are some of the most recent credit identity theft and debt collection scam operators to acquire stolen information related to

Plaintiff's time-barred and extinguished account as well as Plaintiff's personal and financial information, and use that stolen information to contact and falsely threaten Plaintiff with litigation and other adverse consequences, in efforts to coerce the payment of money from Plaintiff.

62.     On October 10, 2025, Defendants placed four calls from telephone number 269-224-9688 (a West Michigan area code), to Plaintiff's cellular telephone (also with a Michigan area code) and left the following pre-recorded message on Plaintiff's voice mail: "This call is from World Processing. Please press 1 now to be connected with a representative who is handling your account within our office. Again, this call is regarding your payment on file with World Processing. Please press 1 now. Thank you."

63.     On October 14, 2025, a return call was made to Defendants at 269-224-9688, which was answered by Defendants' employee and agent, who identified herself as "Karrin Smith," a "Legal Aid," with "World Processing, a Legal Firm," also known as "World Processing Mediation Group," at 855-563-0142, Extension 107," who recited Plaintiff's full Social Security Number, and who made the following false and wrongful statements and threats:

a)      Plaintiff owed $2,385.36 to Santander Consumer USA Inc. for an unpaid auto loan that was obtained by Plaintiff on May 5, 2008 and went delinquent in 2010, with the Account Number 300001734010210000, also known as Account Number 31734121.

b)      "We represent Santander Auto."

c)      "We process legal matters here before they are presented in court."

d)      "Have you been handed or served any paperworks [sic] or documents in

regards to a civil complaint that was filed against you?"

e)    "In the contract that you signed with Santander, were you aware of the tolling agreement? This contract states that if you defaulted on the loan, they do have the right to pursue legal action against you for up into a period of twenty-five years. So they are trying to collect on their funds. Are you willing to appear in court and contest the account with them, the financial company, Santander?"

f)    ""I'm the Legal Aid for Santander. What's going on is that we will either have you appear in court if we cannot come to a settlement outside of court or rectify this matter somehow."

g)    ""These big companies let the account sit and build up, and they right before that twenty-five year mark, they like to pursue litigation."

h)    "I think that your best bet will probably be to contest the account, you know, retain an attorney, to make sure they can read over all the information and request a discovery for you, and go from there if you like."

i)    "So what I'll do is I'll go ahead and process out a summons for you so that you can receive all the evidence that they claim to have and we can go from there."

j)    "Santander says that you owe a $2,385.36 balance. That's the balance they are willing to let you cover outside of court. If you appear in court, what they are trying to pursue you for is $10,798.03."

k)     "Santander's telephone number is 855-638-0343."

l)     "I have to forward your documentation to Santander."

m)     "We only use two merchants to run payments, World Processing and

Secure Collect."

Telephone numbers 855-563-0142 and 855-638-0343 are registered to Defendants Brian Alonzo

Brown and World Processing LLC.

64.    On October 14, 2025, in response to Defendants' false threats of litigation and

other adverse consequences, Plaintiff authorized a payment to Defendants by debit card in the

amount of $100.00.

65.    According to the debit card's issuing bank, on October 14, 2025, Plaintiff's

payment of $100.00 was deposited into Defendants' Merchant Account maintained in the name

of Secure Collect LLC, telephone number 404-445-3673, located in Georgia. On October 15,

2025, Plaintiff's payment of $100.00 posted to Defendants' Merchant Account maintained in the

name of Secure Collect LLC, telephone number 470-480-3634, located in Georgia.

66.    On October 14, 2025, Defendants used the email address

infoworldprocessing@gmail.com to send an email to Plaintiff, using the services of Docusign,

Inc. Attached to the email was a two-page document captioned "DEBT RESOLUTION

AGREEMENT," purporting to be from "WORLD PROCESSING," which falsely stated that

Plaintiff owed $10,798.03 to Santander in connection with Account Number

30000173401021000 and that Santander was Defendants' "CLIENT." A copy of the email and

18

document are attached to this Complaint as Exhibit A.

67.     Plaintiff refused to make any additional payments to Defendants.

68.     On November 14, 2025, Defendants used the email address

info@world-processing.com to send an email to Plaintiff, demanding the payment of money.

Defendants also copied the email to themselves at info@worldprocessing.legal. A copy of the

email is attached to this Complaint as Exhibit B.

69.     From November 15, 2025 through February 4, 2026, Defendants sent the same

email to Plaintiff, eighty-two times, demanding the payment of money. Plaintiff did not respond

to the emails.

70.     On January 30, 2026, Defendants placed a call from telephone number 947-204-

5845 (a Michigan area code), to Plaintiff's cellular telephone (also with a Michigan area code)

and left the following pre-recorded message on Plaintiff's voice mail: "This call is from World

Processing. Please call the number back on your caller ID to be connected with a live

representative. Thank you."

71.     On February 3, 2026, Defendants placed a call from telephone number 734-224-

6562 (a Michigan area code), to Plaintiff's cellular telephone (also with a Michigan area code)

and left the following pre-recorded message on Plaintiff's voice mail: "This call is from World

Processing. Please press 1 now to be connected with a representative who is handling your

account within our office. Again, this call is regarding your payment on file with World

Processing. Please press 1 now. Thank you."

72.    On February 5, 2026, a return call was made to Defendants at 734-224-6562, which was answered by Defendants' male employee and agent, who answered the call with the words "World Processing," but refused to provide his name, and who made the following false and wrongful statements and threats:

a)    "We were calling for the Santander Bank auto loan. You made a payment on your case to stop legal action against you on October 14, 2025."

b)    "Do you wanna go ahead and just get the matter resolved with a one-time payment of $530.00? If not we're gonna process it over for the remaining balance owed of $3,600.00. We're gonna file for litigation."

c)    "We're gonna turn it over to the county for litigation."

d)    "Your option is to pay the $530.00 now, or we're gonna forward it out for litigation. You have to pay $530.00 now!"

73.    The above-described threats and representations made by Defendants and Defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by Defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats of litigation and prosecution, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of consumers' stolen account and personal information.

74.    Defendants and their employees and agents regularly, repeatedly and falsely communicated to Plaintiff and other consumers that Defendants are lawyers, and engaged in the

20

unauthorized practice of law in Michigan, a crime.

> A person shall not practice law or engage in the law business, shall not in any manner whatsoever lead others to believe that he or she is authorized to practice law or to engage in the law business, and shall not in any manner whatsoever represent or designate himself or herself as an attorney and counselor, attorney at law, or lawyer, unless the person is regularly licensed and authorized to practice law in this state. A person who violates this section is guilty of contempt of the supreme court, . . ." M.C.L. 600.916(1). "[P]unishment for contempt may be a fine of not more than $7,500.00, or imprisonment which . . . shall not exceed 93 days, or both[.]" M.C.L. 600.1715(1).

> It shall be unlawful for any corporation or voluntary association to . . . assume, use or advertise the title of lawyer or attorney, attorney-at-law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law, . . . or to advertise that either alone or together with or by or through any person whether a duly and regularly admitted attorney-at-law, or not, it has, owns, conducts or maintains a law office or an office for the practice of law, or for furnishing legal advice, services or counsel." M.C.L. 450.681. Any corporation or voluntary association violating the provisions of this section, and every officer, trustee, director, agent or employee of such corporation or voluntary association who directly or indirectly engages in any of the acts herein prohibited or assists such corporation or voluntary association to do such prohibited acts shall be guilty of a misdemeanor, and shall be punished by a fine of not to exceed 1,000 dollars or by imprisonment for a period of not to exceed 6 months, or by both[.]" *Id.*

It is a violation of the FDCPA to commit a crime in connection with the collection of any debt

75.    Defendants and their employees and agents failed to meaningfully identify

themselves and their companies.

76.    Defendants and their employees and agents falsely represented and inflated the

amount of Plaintiff's alleged debt.

77.    Defendants and their employees and agents falsely represented and inflated the

amount of Plaintiff's alleged debt, increasing the fake amount by thousands of dollars.

78.    Defendants and their employees and agents falsely represented that Plaintiff

21

owed a debt that is not owed.

79.    Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

80.    Defendants and their employees and agents falsely represented that they were retained by the owner of the account to collect the alleged debt.

81.    Defendants and their employees and agents falsely represented that they were retained by Santander Consumer USA Inc. to collect the alleged debt.

82.    Defendants and their employees and agents wrongfully obtained and wrongfully used personal information regarding Plaintiff, for the purpose of communicating with Plaintiff, in an effort to coerce the payment of money from Plaintiff.

83.    Defendants and their employees and agents falsely represented that they are a lawyers and a law firm.

84.    Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

85.    Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

86.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Plaintiff to collect the alleged debt.

87.    Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Plaintiff to collect the alleged debt.

22

88.     Defendants and their employees and agents wrongfully threatened to file a lawsuit against Plaintiff to collect a known, time-barred debt.

89.     Defendants and their employees and agents falsely represented and falsely implied that Plaintiff and the Santander account were subject to the terms of a twenty-five year "tolling agreement" that somehow superceded the applicable Michigan four-year statute of limitations and allowed Defendants to sue Plaintiff to collect an otherwise time-barred debt.

90.     Defendants did not intend to file a lawsuit against Plaintiff in any court in efforts to collect the alleged debt.

91.     No Defendant has ever filed any lawsuit in any Michigan court to collect any debt from any consumer.

92.     Defendants and their employees and agents falsely represented and falsely implied that a judgment would be entered against Plaintiff.

93.     Defendants and their employees and agents falsely represented and falsely implied that Plaintiff was going to be served with a summons to appear in court.

94.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

95.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

96.     The FDCPA states that it is unlawful for a debt collector to place a telephone call

without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

97.    The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that the debt collector is vouched for or affiliated with the United States or any State.  15

U.S.C. § 1692e(1).

98.    The FDCPA states that it is unlawful for a debt collector to make any false

representation regarding the character, amount, or legal status of any debt.  15 U.S.C. §

1692e(2)(A).

99.    The FDCPA states that it is unlawful for a debt collector to make any false

representation regarding the compensation which may be lawfully received by any debt collector

for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

100.    The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that any individual is an attorney or that any communication is from any attorney.

15 U.S.C. § 1692e(3).

101.    The FDCPA states that it is unlawful for a debt collector to threaten to take any

action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

102.    The FDCPA states that it is unlawful for a debt collector to communicate to any

person credit information which is known or which should be known to be false.  15 U.S.C. §

1692e(8).

103.    The FDCPA states that it is unlawful for a debt collector to use any false

representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. §
1692e(10).

104.    The FDCPA states that it is unlawful for a debt collector to communicate in a
communication with a consumer to fail to disclose that the communication is from a debt
collector.  15 U.S.C. § 1692e(11).

105.    The FDCPA states that it is unlawful for a debt collector to falsely represent or
imply that documents are legal process.  15 U.S.C. § 1692e(13).

106.    The FDCPA states that it is unlawful for a debt collector to use any business,
company, or organization name other than the true name of the debt collector's business,
company, or organization.  15 U.S.C. § 1692e(14).

107.    The FDCPA states that it is unlawful for a debt collector to use unfair or
unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

108.    The FDCPA states that it is unlawful for a debt collector to collect any amount
unless such amount is expressly authorized by the agreement creating the debt or permitted by
law.  15 U.S.C. § 1692f(1).

109.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C.
§§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (5), (8), (10), (11), (13) and
(14), and 1692f and 1692f(1).

110.    The FDCPA requires that, within five days of the initial communication with a

consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

111.    Defendants and their employees and agents failed to timely send to Plaintiff a notice containing the information required by 15 U.S.C. § 1692g(a).

112.    Defendants and their employees and agents had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this Complaint.

113.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

114.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

115.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

116.    Defendants and their employees and agents violated the Identity Theft and

26

Assumption Deterrence Act, 18 U.S.C. § 1028, in their efforts to coerce the payment of money from Plaintiff. It is an express violation of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

117.    In connection with efforts to collect an alleged debt from Plaintiff, Defendants obtained and used personal information regarding Plaintiff from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

118.    The database used by Defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

119.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

120.    The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

121.    The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

122.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

123.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

124.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Plaintiff.

125.    Defendants used the database to obtain, disclose and use personal information

regarding Plaintiff.

126.    Defendants made a false representation to the provider of the database to obtain

28

personal information regarding Plaintiff from Plaintiff's motor vehicle records.

127.    Alternatively, the entity that obtained Plaintiff's personal information from the database and disclosed the personal information to Defendants, made a false representation to the provider of the database to obtain the personal information.

128.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723. It is a violation of the FDCPA to commit a crime in connection with the collection of any debt.

129.    Defendants knowingly obtained, disclosed and used Plaintiff's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

130.    No Defendant had Plaintiff's consent, permission, authorization or waiver to obtain Plaintiff's personal information from the database.

131.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

132.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

133.    Defendants and their employees and agents have intentionally and wilfully violated the DPPA.

134.    Each Defendant was aware, or should have been aware, of the unlawful debt

29

collection practices being used by the other Defendants to collect alleged debts.

135.    As an actual and proximate result of the acts and omissions of Defendants and their employees and agents, Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, invasion of privacy, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which Plaintiff should be compensated in an amount to be established at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

136.    Plaintiff incorporates the foregoing paragraphs by reference.

137.    Each Defendant has violated the FDCPA.  Each Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** Plaintiff seeks judgment against each Defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

138.    Plaintiff incorporates the foregoing paragraphs by reference.

139.    Each Defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** Plaintiff seeks judgment against each Defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00,

pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting Defendants from further obtaining or using Plaintiff's

personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring Defendants to provide Plaintiff with the original and all copies

of any and all documents of any kind that contain any of Plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting Defendants from disseminating Plaintiff's personal

information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

## Count 3 – Michigan Regulation of Collection Practices Act

140.    Plaintiff incorporates the foregoing paragraphs by reference.

141.    Each Defendant has violated the MRCPA.  Each Defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** Plaintiff seeks judgment against each Defendant for:

a)    Actual damages pursuant to M.C.L. § 445.257(2);

b)    Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)    Statutory damages pursuant to M.C.L. § 445.257(2);

d)    Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)    Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

142.    Plaintiff incorporates the foregoing paragraphs by reference.

143.    Each Defendant has violated the MOC.  Each Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

33

e)       Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)       Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** Plaintiff seeks judgment against each Defendant for:

a)       Actual damages pursuant to M.C.L. § 339.916;

b)       Treble the actual damages pursuant to M.C.L. § 339.916;

c)       Statutory damages pursuant to M.C.L. § 339.916;

d)       Equitable relief pursuant to M.C.L. § 339.916; and

e)       Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: February 13, 2026

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
2851 Charlevoix Dr. SE, Ste. 205
Grand Rapids, MI 49546-7090
(616) 776-1176
ConsumerLawyer@aol.com

34